UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.     0:23-cv-61913-WPD

Elvis Paisley,

       Plaintiff,

v.

Bankroll Capital Inc., American Business
Services Inc., and Narin Charanvattanakit
a/k/a Narin Charan,

       Defendants.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff files this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) which allows amendment with leave of Court.

### INTRODUCTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls…. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Defendants have contributed to this barrage of telephone spam by initiating illegal calls to Plaintiff Elvis Paisley ("Paisley").

3. Paisley wants this telephone spam to stop. Others do as well. Defendants have already been sued multiple times for telephone spam, but that has not caused them to stop spamming.

4. Paisley brings this action individually, and on behalf of putative class members, to seek injunctive relief and damages.

1

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C. § 227.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

## PARTIES

7. Plaintiff Elvis Paisley ("Paisley") is a citizen of Florida, residing in North Lauderdale.

8. Defendant Bankroll Capital Inc. ("Bankroll") is a California corporation with its principal place of business in Irvine, CA.

9. Defendant American Business Services Inc. ("ABS") is an inactive Colorado corporation with a principal place of business in Irvine, CA.

10. Defendant Narin Charanvattanakit a/k/a Narin Charan ("Charan") is the Chief Executive Officer, Secretary, Chief Financial Officer, and only Director of Bankroll Capital Inc., and is a citizen of California, residing in Irvine.

## FACTUAL ALLEGATIONS

11. Paisley's home, phone, and privacy have been invaded by Defendants' non-emergency calls.

12. Paisley is the residential subscriber of the cell phone number 954-740-3099. Paisley uses this phone number at home. Paisley makes and takes personal calls and text messages on this phone number.

13. Paisley registered the number 954-740-3099 on the national Do Not Call Registry ("DNCR") on January 29, 2023.

14. Defendants have initiated calls with prerecorded messages to Paisley at least two times, including the following:

> **Mar 22, 2023, at 2:39 pm UTC from 803-525-8244**
> Hey it's Kate with Direct Funding. I was uh giving you a call uh to update you on the business funding. Was actually hoping to catch

you so I can send you an email with the details. Um, this is uh actually my cell phone number. Um, so, if you can, when you get this message, can you shoot me a text with the best email address for you so I can send that over? Um, you can also give me a call at this number if you have any questions. I just um tend to respond a little faster via text. Uh, thanks, and we'll talk soon. Bye bye.

**Apr 5, 2023, at 7:17 pm UTC from 803-525-8244**
Hey it's Kate with Direct Funding. I was uh giving you a call uh to update you on the business funding. Was actually hoping to catch you so I can send you an email with the details. Um, this is uh actually my cell phone number. Um, so, if you can, when you get this message, can you shoot me a text with the best email address for you so I can send that over? Um, you can also give me a call at this number if you have any questions. I just um tend to respond a little faster via text. Uh, thanks, and we'll talk soon. Bye bye.

15. Defendants initiated these calls using a prerecorded voice. Although attempting to mimic an individual leaving a voicemail message, each message was a prerecorded statement sent for the purpose of telemarketing "business funding" products and services offered by Defendants.

16. The messages to Paisley had the same intonation and pauses, etc., indicating the same recorded message was played on both calls and would have played regardless of whether Paisley answered the call.

17. Other clients of Plaintiff's counsel have received the same messages, coming from various phone numbers.

18. Unsolicited prerecorded messages like the messages to Paisley were left with at least five other people besides Paisley, who reported and provided them to Paisley's counsel. The messages were sent from and received by the following numbers on these dates:

From: 213-546-9970; To: 760-845-8250 on May 5, 2023, at 7:34 p.m. UTC.

From: 803-525-3805; To: 386-202-0094 on July 24, 2023, at 4:39 p.m. UTC.

From: 803-525-3805; To: 386-202-0094 on May 30, 2023, at 5:59 p.m. UTC.

From: 505-416-4118; To: 505-604-8382 on May 5, 2023, at 5:14 p.m. UTC.

From: 205-728-2070; To: 813-629-1969 on May 19, 2023, at 5:19 p.m. UTC.

From: 803-558-8111; To: 904-468-2132 on May 25, 2023, at 9:56 p.m. UTC.

19. The callers identified themselves in these messages as "Kate with Direct Funding" and made the same statement that was made in the calls to Paisley, even claiming the number that "Kate" was calling from was her cell phone number and that "Kate" tended to respond faster to text messages. The messages invited the recipients of the calls to text back their email addresses, presumably to the phone number that was associated with each call.

20. When contacting a from number that had left one of these messages, it was determined that the caller was not in fact associated with an entity by the name "Direct Funding."

21. Solely for the purpose of identifying the caller, an inquiry was made by text message (as invited by "Kate" in the pre-recorded message) to the from number 205-728-2070, and an email address was provided to receive the information referenced in the prerecorded call. In response to that text message, two things occurred. First, an e-mail was received from "Kate Anderson" kate.anderson8@absloans.com. Second, a text message was received from 304-560-0987, a different number, identifying themselves as "Ellie from American Business Services." A subsequent call to 304-560-0987 was answered with the greeting "Ellie from American Business Services."

22. The website absloans.com, the domain referenced in Kate Anderson's e-mail, indicates that it is owned and controlled by American Business Services, Inc.

23. A contemporaneous call to the phone number 833-600-0031, the number published on the Bankroll website, was answered by the same person that answered the call to 304-560-0987.

24. ABS and Bankroll act interchangeably as shown by the interaction above, as well as described in other litigation. See *Michael Scofield v. Bankroll Capital, Inc. and American Business Services, Inc.*, No. 8:22-cv-01515-JWH-KES (C.D. Cal.).

25. Both ABS and Bankroll use the address 500 Technology Drive, Irvine, CA 92618.

26. The corporate document filed by Bankroll with the California Secretary of State on March 9, 2023, lists 500 Technology Drive, Irvine, CA 92618, as the principal address and mailing address for Bankroll. Those documents also identify Narin Charan as the sole officer and

director of the corporation, as well as its Chief Executive Officer, Secretary, and Chief Financial Officer.

27. The address 500 Technology Drive, Irvine, CA 92618, is identified for ABS on the website unlock.capital. See https://unlock.capital/application-agreement (last accessed October 31, 2023), attached as Exhibit A.

28. Bankroll has been sued for TCPA violations on several prior occasions. Charan has also been sued for TCPA violations as part of a different company: Capital Alliance Group. Nevertheless, Bankroll and Charan continue to violate the TCPA, making great effort to hide their involvement.

29. Defendants intentionally seek to misdirect the source of the prerecorded call as a way to hide their violations of the TCPA. Defendants' prerecorded calls try to imply that they are coming from Direct Funding Now, LLC.

30. Defendants further obscure their identity by identifying ABS in the initial voicemail greeting when their number is called back. However, ABS is an inactive corporation. It is only after further interaction that Bankroll identifies itself.

31. This misdirection is a strategy of Bankroll and Charan that is the subject matter of a lawsuit brought by Direct Funding Now, LLC. See *Direct Funding Now, LLC v. Bankroll Capital, Inc., et. al.*, Orange County California Superior Court, Case # 30-2023-01356226-CU-BT-NJC. That complaint, filed just days after the initial complaint in this case, describes a scheme in which Bankroll, ABS, and Charan make unsolicited telemarketing calls, but do so in a way that leaves the recipients with the impression that other parties are responsible for the TCPA violations and/or any bad publicity.

32. In each of the above instances, the content of the message left was a clever and deceptive attempt for Defendants to solicit their loan products and services to Paisley and others. For instance, "Kate" was purporting to act as someone from "Direct Funding" and used wording like "update you on business funding" to imply an existing relationship with Paisley when in fact, Paisley has never had a business relationship with Kate, Direct Funding, or Defendants.

33. Additionally, in the messages, "Kate" is deceptively suggesting that she is providing the recipient her personal cell phone number, when in fact the number this message is coming from is a randomly selected phone number controlled by one or more of the Defendants.

34. In the messages, the caller lies outright by stating they are calling from their cell phone number. This is false. The phone number 803-525-8244 is assigned to a company called Commio, which is not a cell phone provider but a provider of programmatic telephone services.

35. Charan is the head of multiple companies that have been sued for TCPA violations and is aware of the law but continues to authorize the TCPA violations.

36. There are many indicia that Defendants initiated the calls using an automated system that randomly or sequentially generated Paisley's number, including:

    i. Bankroll's admission in other litigation that it uses automated software to make calls,

    ii. the lack of relationship between Plaintiff and Defendants,

    iii. the generic nature of the calls,

    iv. the prerecorded message,

    v. a large number of identical messages, and

    vi. the large number of Plaintiff's counsel's other clients who have received the same message but never provided their phone number to Defendants.

37. Paisley never provided the number 954-740-3099 to Defendants, never had a relationship with Defendants, and never gave permission for Defendants to send any type of communication. By information and belief, Defendants initiated thousands of these calls, leaving the exact same unsolicited telemarketing message to thousands of recipients.

38. Defendants' calls are a nuisance and annoyance to Paisley. The calls have invaded Paisley's privacy. The spam has diminished the value of Paisley's phone and Paisley's enjoyment of life.

39. The calls were especially intrusive, frustrating, and annoying to Paisley because Defendants purposefully hid their identity. Paisley had no idea who was spamming, whether the spammer was somebody whom Paisley had previously told to stop, or whether it was safe for

Paisley to make a do-not-call request. By not disclosing Defendants' identity, Defendants knowingly tried to prevent Paisley from monitoring and enforcing compliance with the TCPA.

## LEGAL STANDARD

40. **Prerecorded or Artificial Voice**. The TCPA prohibits calls to cell phones using an "artificial or prerecorded voice" except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. § 64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

41. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

42. **Identification of Caller**. The TCPA requires telemarketers to disclose the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

43. **Automatic Telephone Dialing System**. The TCPA prohibits calls to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. §64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

44. **Personal Liability**. Individuals may be personally liable for TCPA violations when the individual "actually committed the conduct that violated the TCPA, and/or actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018); see also 47 U.S.C. § 217.

## CLASS ACTION ALLEGATIONS

45. Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Paisley brings this action on behalf of all other persons similarly situated throughout the United States.

46. Paisley proposes the following Classes:

**The Prerecorded Voice Class**
All people in the United States (1) to whom Defendants initiated one or more calls to their cellular telephone, (2) using a prerecorded or artificial voice, (3) within the last four years from the filing of this action.

**The DNCR Class**
All people in the United States (1) to whom Defendants initiated more than one telephone solicitation within any 12-month period, (2) to their cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) within the last four years from the filing of this action.

**The Failure to Identify Class**
All persons in the United States (1) to whom Defendants initiated more than one telemarketing call within any 12-month period, (2) to their cellular telephone number, (3) without disclosing the name of the individual initiating the calls and the name of the entity on whose behalf the calls were made, (4) within the last four years from the filing of this action.

**The ATDS Class**
All people in the United States (1) to whom Defendants initiated more than one call to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate calls to Paisley, (3) within the last four years from the filing of this action.

47. Paisley does not know the exact number of class members but reasonably believes the number to be in the thousands, thus making the joinder of all class members impracticable.

48. Class members are identifiable through phone records and phone number databases.

49. There are questions of law and fact common to Paisley and the class members, including but not limited to:

   i. Whether Defendants initiated the calls.

   ii. Whether Defendants' calls violated the law.

   iii. Whether Paisley and class members are entitled to statutory damages, trebled damages, and injunctive relief.

50. Paisley's claims are typical of the claims of the class members. Paisley's claims, like the class members' claims, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

51. Paisley is an adequate representative of the class because Paisley's interests do not conflict with the interests of the class members, Paisley will fairly and adequately protect the interests of the class members, and Paisley is represented by counsel skilled and experienced in class actions, including TCPA class actions.

52. Common questions of law and fact predominate over questions affecting only individual class members.

53. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the damages are statutory. Notice to class members can be provided by mail or other means. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

54. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
### Illegal Use of a Prerecorded or Artificial Voice
#### (On Behalf of Plaintiff and the Prerecorded Voice Class)

55. Defendants violated 47 C.F.R. § 64.1200(a)(1)-(2) by using a prerecorded or artificial voice without consent and without an emergency purpose when initiating calls to Paisley and members of the Prerecorded Voice Class.

56. Paisley and members of the Prerecorded Voice Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

57. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

58. The court should enjoin such violations. *Id*.

## SECOND CAUSE OF ACTION
### Illegal Solicitation of Persons on the DNCR
### (On Behalf of Paisley and the Do Not Call Class)

59. Defendants violated 47 C.F.R. § 64.1200(c)(2) by initiating calls to Paisley and members of the DNCR Class while their phone numbers were on the DNCR.

60. Paisley and members of the DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

61. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*.

62. The court should enjoin such violations. *Id*.

## THIRD CAUSE OF ACTION
### Failure To Identify
### (On Behalf of Paisley and the Failure to Identify Class)

63. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating calls to Paisley and members of the Failure to Identify Class without disclosing the name of the individual initiating the calls and the name of the person or entity on whose behalf the calls were made.

64. Paisley and members of the Failure to Identify Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

65. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*.

66. The court should enjoin such violations. *Id*.

## FOURTH CAUSE OF ACTION
### Illegal Use of an Automatic Telephone Dialing System
### (On Behalf of Paisley and the Failure to Identify Class)

67. Defendants violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to contact Paisley and members of the ATDS Class.

68. Paisley and members of the ATDS Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

69. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

70. The court should enjoin such violations. *Id*.

## RELIEF REQUESTED

Paisley respectfully requests the Court grant the following relief:

A. Certification of the proposed Classes;

B. Appointment of Paisley as class representative;

C. Appointment of the undersigned as lead counsel for the Classes;

D. Injunctive relief as set forth above;

E. An award of damages to Paisley and class members, as allowed by law;

F. An award of fees, costs, and interest, as allowed by law; and

G. Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Paisley requests a jury trial as to all claims of the Complaint so triable.

DATED November 27, 2023

Respectfully submitted,

*/s/ John Kauffman*
John Kauffman
Florida Bar No. 538205
LawHQ, PC
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090
john.kauffman@lawhq.com

*Lead Attorney for Plaintiff*