UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  0:23-cv-61913-WPD

ELVIS PAISLEY,

         Plaintiff,

   v.

BANKROLL   CAPITAL   INC,   and
NARIN       CHARANVATTANAKIT
*a/k/a* NARIN CHARAN.

         Defendants.

_____/

### DEFEDANTS' ANSWER & AFFIRMATIVE DEFENSES TO FIRST AMENDED CLASS ACTION COMPLAINT

Defendants  BANKROLL  CAPITAL  INC.  ("BANKROLL"),  and  NARIN  CHARANVATTANAKIT

("CHARAN") by and through undersigned counsel hereby answer the First Amended Complaint filed

by Plaintiff, ELVIS PAISLEY and denies any, and all, allegations or inference that are not expressly

admitted  or  stated  herein.   Complaint  allegations  are  single  spaced  for  convenience  of  reader.

Defendant states as follows as to Plaintiffs' specific allegations:

**ANSWER**

INTRODUCTION

1. As the Supreme Court has explained, "Americans passionately disagree about many
   things. But they are largely united in their disdain for robocalls…. For nearly 30 years,
   the people's representatives in Congress have been fighting back. As relevant here, the
   Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits
   robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*,
   140 S. Ct. 2335, 2343 (2020).

ANSWER: Complaint ¶ 1 makes no allegation against the Defendants requiring it admit or deny

in response. To the extent a response is required from the Defendant, the inferences, and allegations of ¶ 1 are denied.

2. Defendants have contributed to this barrage of telephone spam by initiating illegal calls to Plaintiff Elvis Paisley ("Paisley").

ANSWER: The allegations and inferences of ¶ 2 of the Compl.. are denied by the Defendants.

3. Paisley wants this telephone spam to stop. Others do as well. Defendants have already been sued multiple times for telephone spam, but that has not caused them to stop spamming.

ANSWER: The allegations and inferences of ¶ 3 of the Compl.. are denied by the Defendants.

4. Paisley brings this action individually, and on behalf of putative class members, to seek injunctive relief and damages.

ANSWER: The allegations and inferences of ¶ 4 of the Compl.. are denied by the Defendants.

JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C. § 227.

ANSWER: The allegations and inferences of ¶ 5 of the Compl.. are denied by the Defendants.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

ANSWER: The allegations and inferences of ¶ 6 of the Compl.. are denied by the Defendants.

PARTIES

7. Plaintiff Elvis Paisley ("Paisley") is a citizen of Florida, residing in North Lauderdale.

ANSWER:   Defendants are without knowledge sufficient to admit or deny the allegations of ¶ 7 of the Compl. All other remaining allegations or inferences of ¶ 7 are otherwise denied.

8.  Defendant Bankroll Capital Inc. ("Bankroll") is a California corporation with its principal place of business in Irvine, CA.

ANSWER: Admitted by the Defendants.

9.  Defendant American Business Services Inc. ("ABS") is an inactive Colorado corporation with a principal place of business in Irvine, CA.

ANSWER: The allegations of ¶ 9 of the Compl. are admitted in part and denied in part by the Defendants.  Defendants admit that American Business Services Inc. is an inactive Colorado corporation.  Defendants deny that Colorado company American Business Services Inc. has a principal place of business in Irvine, CA.  All other remaining allegations or inferences of ¶ 9 are otherwise denied.

10. Defendant Narin Charanvattanakit a/k/a Narin Charan ("Charan") is the Chief Executive Officer, Secretary, Chief Financial Officer, and only Director of Bankroll Capital Inc., and is a citizen of California, residing in Irvine.

ANSWER:  Defendant Charan admits he is an officer of the Defendant Bankroll, admits that he is a resident of California, and denies that he personal involvement in the placement of any calls or text messages alleged made to the Plaintiff and his role in Bankroll is limited to a marco-level of management of its operations.  All other allegations or inferences of  are otherwise denied by the Defendants.

## FACTUAL ALLEGATIONS

11. Paisley's home, phone, and privacy have been invaded by Defendants' non-emergency calls.

ANSWER: The allegations and inferences of ¶ 11 of the Compl.. are denied by the Defendants.

12. Paisley is the residential subscriber of the cell phone number 954-740-3099. Paisley uses this phone number at home. Paisley makes and takes personal calls and text messages on this phone number.

ANSWER: Defendants are without knowledge sufficient to admit or deny the allegations

of  ¶ 12 of the Compl. and demand strict proof thereof. All other remaining allegations

or inferences of ¶ 12 are otherwise denied.

13. Paisley registered the number 954-740-3099 on the national Do Not Call Registry ("DNCR") on January 29, 2023.

ANSWER: Defendants are without knowledge sufficient to admit or deny the allegations

of ¶ 13 of the Compl. All other remaining allegations or inferences of ¶ 13 are otherwise

denied.

14. Defendants have initiated calls with prerecorded messages to Paisley at least two times, including the following:  *[Calls alleged under ¶ 14 of the Compl. Omitted herein for purpose of this Answer and its reading simplification.]*

ANSWER: The allegations and inferences of ¶ 14 of the Compl.. are denied by the Defendants.

15. Defendants initiated these calls using a prerecorded voice. Although attempting to mimic an individual leaving a voicemail message, each message was a prerecorded statement sent for the purpose of telemarketing "business funding" products and services offered by Defendants.

<u>ANSWER</u>: The allegations and inferences of ¶ 15 of the Compl. are denied by the Defendants.

16. The messages to Paisley had the same intonation and pauses, etc., indicating the same recorded message was played on both calls and would have played regardless of whether Paisley answered the call.

<u>ANSWER</u>: Defendants are without knowledge sufficient to admit or deny the allegations of ¶ 16 of the Compl. and demand strict proof thereof All other remaining allegations or inferences of ¶ 16 are otherwise denied.

17. Other clients of Plaintiff's counsel have received the same messages, coming from various phone numbers.

<u>ANSWER</u>: The allegations and inferences of ¶ 17 of the Compl. are denied by the Defendants.

18. Unsolicited prerecorded messages like the messages to Paisley were left with at least five other people besides Paisley, who reported and provided them to Paisley's counsel. The messages were sent from and received by the following numbers on these dates: *[Calls alleged under ¶ 18 of the Compl. Omitted herein for purpose of this Answer and its reading simplification.]*

<u>ANSWER</u>: The allegations and inferences of ¶ 18 of the Compl. are denied by the Defendants.

19. The callers identified themselves in these messages as "Kate with Direct Funding" and made the same statement that was made in the calls to Paisley, even claiming the number that "Kate" was calling from was her cell phone number and that "Kate" tended to respond faster to text messages. The messages invited the recipients of the calls to text back their email addresses, presumably to the phone number that was associated with each call.

<u>ANSWER</u>: Defendants are without knowledge sufficient to admit or deny the allegations of ¶ 19 of the Compl. and demand strict proof thereof.  All other remaining allegations or inferences of ¶ 19 are otherwise denied.

20. When contacting a from number that had left one of these messages, it was determined that the caller was not in fact associated with an entity by the name "Direct Funding." *[Illustrative Messages alleged under ¶ 20 of the Compl. Omitted herein for purpose of this Answer and its reading simplification.]*

ANSWER: Defendants admit in part and deny in part the allegations of ¶ 20 of the Compl. Defendants admit that they utilize email campaigns in the course of their business. Defendants admit that they subscribed to the telephone number 205-728-2070 for inbound calls but do not use, and have not used, telephone numbers 205-728-2070  or 304-560- 0987for any outbound text messages within the relevant period as alleged by the Plaintiff in ¶ 20 of the Compl.   All remaining inferences and allegations of ¶ 20 are otherwise denied.

21. Solely for the purpose of identifying the caller, an inquiry was made by text message (as invited by "Kate" in the pre-recorded message) to the from number 205-728-2070, and an email address was provided to receive the information referenced in the prerecorded call. In response to that text message, two things occurred. First, an e-mail was received from "Kate Anderson" kate.anderson8@absloans.com. Second, a text message was received from 304-560- 0987, a different number, identifying themselves as "Ellie from American Business Services." A subsequent call to 304-560-0987 was answered with the greeting "Ellie from American Business Services."

ANSWER: The allegations and inferences of ¶ 21 of the Compl. are denied by the Defendants.

22. The website absloans.com, the domain referenced in Kate Anderson's e-mail, indicates that it is owned and controlled by American Business Services, Inc.

ANSWER: The allegations and inferences of ¶ 22 of the Compl. are denied by the Defendants.

23. A contemporaneous call to the phone number 833-600-0031, the number published on the Bankroll website, was answered by the same person that answered the call to 304-560-0987.

ANSWER: Defendants admit in part and deny in part the allegations of ¶ 23 of the Compl. Defendants admit that 833-600-0031 is an ordinary business line telephone number of Defendant BANKROLL.  Defendants deny all remaining allegations and inferences of ¶ 23 of the Compl.

24. ABS and Bankroll act interchangeably as shown by the interaction above, as well as described in other litigation. See *Michael Scofield v. Bankroll Capital, Inc. and American Business Services, Inc.*, No. 8:22-cv-01515-JWH-KES (C.D. Cal.).

ANSWER: Defendants admit in part and deny in part the allegations of ¶ 24 of the Compl. Defendants admit that ABS is a trade name of Defendant BANKROLL used at time in business. Defendants deny all remaining allegations and inferences of ¶ 24 of the Compl. as related to pleadings in other litigation and the merits of said civil litigation.

25. Both ABS and Bankroll use the address 500 Technology Drive, Irvine, CA 92618.

ANSWER: Defendants admit in part and deny in part the allegations of ¶ 25 of the Compl. Defendants admit that Defendant BANKROLL conducts business at the alleged address and that Defendant BANKROLL. Defendants deny all remaining allegations and inferences of ¶ 25 of the Compl.

26. The corporate document filed by Bankroll with the California Secretary of State on March 9, 2023, lists 500 Technology Drive, Irvine, CA 92618, as the principal address and mailing address for Bankroll. Those documents also identify Narin Charan as the sole officer and director of the corporation, as well as its Chief Executive Officer, Secretary, and Chief Financial Officer.

ANSWER: Admitted by the Defendants.

27. The address 500 Technology Drive, Irvine, CA 92618, is identified for ABS on the website unlock.capital. See https://unlock.capital/application-agreement (last accessed October 31, 2023), attached as Exhibit A.

ANSWER: Defendants reassert Answer to ¶ 9 of the Compl. to the extent that ABS was acquired as a trade name by Defendant BANKROLL and that the trade name is used in business by Defendant BANKROLL, including email and internet campaigns. Defendants deny all remaining allegations and inferences of ¶ 27 of the Compl.

28. Bankroll has been sued for TCPA violations on several prior occasions. Charan has also been sued for TCPA violations as part of a different company: Capital Alliance Group. Nevertheless, Bankroll and Charan continue to violate the TCPA, making great effort to hide their involvement.

ANSWER: The allegations and inferences of ¶ 28 of the Compl. as to "Bankroll and Charan continue to violate the TCPA, making great effort to hide their involvement" are denied by the Defendants.  Defendants deny the merits of any prior litigation in the past.  Defendants are without knowledge sufficient to admit or deny the remaining allegations and inferences of ¶ 28 of the Compl., or causal connection to Plainitff's claims raised in the Compl.  and demand strict proof thereof

29. Defendants intentionally seek to misdirect the source of the prerecorded call as a way to hide their violations of the TCPA. Defendants' prerecorded calls try to imply that they are coming from Direct Funding Now, LLC.

ANSWER: The allegations and inferences of ¶ 29 of the Compl. are denied by the Defendants.

30. Defendants further obscure their identity by identifying ABS in the initial voicemail greeting when their number is called back. However, ABS is an inactive corporation. It is only after further interaction that Bankroll identifies itself.

ANSWER: The allegations and inferences of ¶ 30 of the Compl. are denied by the Defendants.

31. This misdirection is a strategy of Bankroll and Charan that is the subject matter of a lawsuit brought by Direct Funding Now, LLC. See *Direct Funding Now, LLC v. Bankroll Capital, Inc., et. al.*, Orange County California Superior Court, Case # 30-2023-01356226-CU- BT-NJC. That complaint, filed just days after the initial complaint in this case, describes a scheme in which Bankroll, ABS, and Charan make unsolicited telemarketing calls, but do so in a way that leaves the recipients with the impression that other parties are responsible for the TCPA violations and/or any bad publicity.

ANSWER: The allegations and inferences of ¶ 31 of the Compl. are denied by the Defendants. Defendants specifically deny that any time did they use the trade name or service mark "Direct

Funding Now" or if such generic name or descriptive is attributable in goods or services exclusively to Direct Funding Now, LLC. Defendants admit that Direct Funding Now, LLC may be liable for its own violations of the TCPA and calling party numbers that it controls or contracts for marketing purposes. Defendants deny the merits of claims raised in *Direct Funding Now, LLC v. Bankroll Capital, Inc., et. al.*, Orange County California Superior Court, Case # 30-2023-01356226-CU- BT-NJC. All remaining allegations and inferences of ¶ 30 are otherwise denied.

32. In each of the above instances, the content of the message left was a clever and deceptive attempt for Defendants to solicit their loan products and services to Paisley and others. For instance, "Kate" was purporting to act as someone from "Direct Funding" and used wording like "update you on business funding" to imply an existing relationship with Paisley when in fact, Paisley has never had a business relationship with Kate, Direct Funding, or Defendants.

ANSWER: The allegations and inferences of ¶ 32 of the Compl. are denied by the Defendants.

33. Additionally, in the messages, "Kate" is deceptively suggesting that she is providing the recipient her personal cell phone number, when in fact the number this message is coming from is a randomly selected phone number controlled by one or more of the Defendants.

ANSWER: The allegations and inferences of ¶ 33 of the Compl. are denied by the Defendants.

34. In the messages, the caller lies outright by stating they are calling from their cell phone number. This is false. The phone number 803-525-8244 is assigned to a company called Commio, which is not a cell phone provider but a provider of programmatic telephone services.

ANSWER: The allegations and inferences of ¶ 34 of the Compl. are denied by the Defendants.

35. Charan is the head of multiple companies that have been sued for TCPA violations and is aware of the law but continues to authorize the TCPA violations.

ANSWER: The allegations and inferences of ¶ 35 of the Compl. are denied specifically by Defendant CHARAN. Defendant BANKROLL without knowledge sufficient to admit or deny

the allegations of ¶ 35 of the Compl. and demand strict proof thereof.  All other remaining

allegations or inferences of ¶ 35 are otherwise denied.

36. There are many indicia that Defendants initiated the calls using an automated system
    that randomly or sequentially generated Paisley's number, including:
    i.  Bankroll's admission in other litigation that it uses automated software to
        make calls,
    ii.  the lack of relationship between Plaintiff and Defendants,
    iii.  the generic nature of the calls,
    iv.  the prerecorded message,
    v.  a large number of identical messages, and
    vi.  the large number of Plaintiff's counsel's other clients who have received
        the same message but never provided their phone number to Defendants.

ANSWER: The allegations and inferences of ¶ 36 of the Compl. are denied by the Defendants.

Specifically, Defendants deny use of an Automated Telephone Dialing System (ATDS) as

prescribed by and as defined by the TCPA and prevailing law.  The Defendants further deny that

the indica listed qualify as definitive indica of the qualities or functions of an ATDS under

prevailing law.  All other allegations and inferences within ¶ 36 of the Compl. are otherwise

denied.

37. Paisley never provided the number 954-740-3099 to Defendants, never had a
    relationship with Defendants, and never gave permission for Defendants to send any
    type of communication. By information and belief, Defendants initiated thousands of
    these calls, leaving the exact same unsolicited telemarketing message to thousands of
    recipients

ANSWER: The allegations and inferences of ¶ 37 of the Compl. are denied by the Defendants.

Specifically, Defendants deny any call to Paisley as alleged as no call log exists for a call to the

number alleged in the business records of Defendant BANKROLL and only one centralized

system is used by Defendant BANKROLL.  Defendant further deny any allegations or inferences

that thousands of calls were made by the Defendants to consumers, or otherwise persons defined

by the TCPA, as Defendant BAMKROLL's business is limited to Business-to-Business (B2B)

sales calls based upon online publications and state corporate records for businesses.   All

remaining allegations and inferences are otherwise denied. Defendants admit that any errors due to a private party listing their telephone numbers as business numbers would be limited and parties would be joinable in such circumstances.

38. Defendants' calls are a nuisance and annoyance to Paisley. The calls have invaded Paisley's privacy. The spam has diminished the value of Paisley's phone and Paisley's enjoyment of life.

ANSWER: The allegations and inferences of ¶ 38 of the Compl. are denied by the Defendants. Defendants have no call record withing their records of a call being placed by them or their agents to Paisley.

39. The calls were especially intrusive, frustrating, and annoying to Paisley because Defendants purposefully hid their identity. Paisley had no idea who was spamming, whether the spammer was somebody whom Paisley had previously told to stop, or whether it was safe for Paisley to make a do-not-call request. By not disclosing Defendants' identity, Defendants knowingly tried to prevent Paisley from monitoring and enforcing compliance with the TCPA.

ANSWER: Defendants are without knowledge sufficient to admit or deny the allegations of ¶ 39 of the Compl. and demand strict proof thereof All other remaining allegations or inferences of ¶ 38 are otherwise denied.

LEGAL STANDARD

40. **Prerecorded or Artificial Voice**. The TCPA prohibits calls to cell phones using an "artificial or prerecorded voice" except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. § 64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

ANSWER: The federal codified rule cited in Compl. ¶ 40 speaks for itself and make no allegation or inference against the Defendants to respond.  To the extent a response is required, Defendants deny the inferences and allegations. All remaining allegations and inferences of Compl. ¶ 40

against it are otherwise denied by the Defendants.

41. **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

ANSWER: The federal codified rule cited in Compl. ¶ 41 speaks for itself and make no allegation or inference against the Defendants to respond. To the extent a response is required, Defendants deny the inferences and allegations. All remaining allegations and inferences of Compl. ¶ 41 against them are otherwise denied by the Defendants.

42. **Identification of Caller**. The TCPA requires telemarketers to disclose the name of the individual caller and the name of the person or entity on whose behalf the call is being made. 47 C.F.R. § 64.1200(d)(4).

ANSWER: The federal codified rule cited in Compl. ¶ 42 speaks for itself and make no allegation or inference against the Defendants to respond. To the extent a response is required, Defendants deny the inferences and allegations. All remaining allegations and inferences of Compl. ¶ 42 against them are otherwise denied by the Defendants.

43. **Automatic Telephone Dialing System**. The TCPA prohibits calls to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. §64.1200(a)(1). Calls that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R.§ 64.1200(a)(2).

ANSWER: The federal codified rule cited in Compl. ¶ 43 speaks for itself and make no allegation or inference against the Defendants to respond. To the extent a response is required, Defendants deny the inferences and allegations of use of an ATDS under prevailing law. All remaining allegations and inferences of Compl. ¶ 43 against them are otherwise denied by the Defendants.

44. **Personal Liability**. Individuals may be personally liable for TCPA violations when the individual "actually committed the conduct that violated the TCPA, and/or actively oversaw and directed this conduct." *City Select Auto Sales Inc. v. David Randall Assocs.*, 855 F.3d 154, 162 (3d Cir. 2018); see also 47 U.S.C. § 217.

ANSWER: The federal statue and codified rule cited in Compl. ¶ 44 speaks for themselves and make no allegation or inference against the Defendants to respond.  To the extent a response is required, Defendants deny the inferences and allegations of ¶ 44. All remaining allegations and inferences of Compl. ¶ 44 against them under case law cited are otherwise denied by the Defendants.

## CLASS ACTION ALLEGATIONS

45. Pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), Paisley brings this action on behalf of all other persons similarly situated throughout the United States.

ANSWER: The allegations and inferences of ¶ 45 of the Compl. are denied by the Defendants to the extent that Plaintiff Paisley is qualified to bring a class action against the Defendants based upon himself and  other persons similarly situated throughout the United States.

46. Paisley proposes the following Classes:

ANSWER: The allegations and inferences of ¶ 46 of the Compl. are denied by the Defendants with the additional specific denials as to respective Class(s) proposed:

> **The Prerecorded Voice Class**
> All people in the United States (1) to whom Defendants initiated one or more calls to their cellular telephone, (2) using a prerecorded or artificial voice, (3) within the last four years from the filing of this action.

ANSWER: Defendants deny that Plaintiff received one or more call from BANKROLL.

> **The DNCR Class**
> All people in the United States (1) to whom Defendants initiated more than one

telephone solicitation within any 12-month period, (2) to their cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) within the last four years from the filing of this action.

ANSWER: Defendants deny that they initiated more than one telephone call solicitation within a twelve-month period to representative Plaintiff Paisley.

> **The Failure to Identify Class**
> All persons in the United States (1) to whom Defendants initiated more than one telemarketing call within any 12-month period, (2) to their cellular telephone number, (3) without disclosing the name of the individual initiating the calls and the name of the entity on whose behalf the calls were made, (4) within the last four years from the filing of this action.

ANSWER: Defendants deny that they initiated more than one telephone call solicitation within a twelve-month period to representative Plaintiff Paisley.

> **The ATDS Class**
> All people in the United States (1) to whom Defendants initiated more than one call to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate calls to Paisley, (3) within the last four years from the filing of this action.

ANSWER: Defendants deny that they initiated a telephone call solicitation  with a system defined by the TCPA under prevailing law within a twelve-month period to representative Plaintiff Paisley.

47. Paisley does not know the exact number of class members but reasonably believes the number to be in the thousands, thus making the joinder of all class members impracticable.

ANSWER: The allegations and inferences of ¶ 47 of the Compl. are denied by the Defendants.

48. Class members are identifiable through phone records and phone number databases.

ANSWER: Admitted.

49. There are questions of law and fact common to Paisley and the class members, including but not limited to:
    i. Whether Defendants initiated the calls.
    ii. Whether Defendants' calls violated the law.
    iii. Whether Paisley and class members are entitled to statutory damages, trebled damages, and injunctive relief.

ANSWER: The allegations and inferences of ¶ 49 of the Compl., and its subparts, are denied by the Defendants.

50. Paisley's claims are typical of the claims of the class members. Paisley's claims, like the class members' claims, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

ANSWER: The allegations and inferences of ¶ 50 of the Compl. are denied by the Defendants.

51. Paisley is an adequate representative of the class because Paisley's interests do not conflict with the interests of the class members, Paisley will fairly and adequately protect the interests of the class members, and Paisley is represented by counsel skilled and experienced in class actions, including TCPA class actions.

ANSWER: The allegations and inferences of ¶ 51 of the Compl. are denied by the Defendants.

52. Common questions of law and fact predominate over questions affecting only individual class members.

ANSWER: The allegations and inferences of ¶ 52 of the Compl. are denied by the Defendants.

53. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the damages are statutory. Notice to class members can be provided by mail or other means. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

ANSWER: The allegations and inferences of ¶ 53 of the Compl. are denied by the Defendants.

54. The likelihood that individual class members will prosecute separate actions is remote

due to the time and expense necessary to prosecute an individual case.

ANSWER: The allegations and inferences of ¶ 54 of the Compl. are denied by the Defendants.

FIRST CAUSE OF ACTION
Illegal Use of a Prerecorded or Artificial Voice
(On Behalf of Plaintiff and the Prerecorded Voice Class)

55. Defendants violated 47 C.F.R. § 64.1200(a)(1)-(2) by using a prerecorded or artificial voice without consent and without an emergency purpose when initiating calls to Paisley and members of the Prerecorded Voice Class.

ANSWER: Denied.

56. Paisley and members of the Prerecorded Voice Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

ANSWER: Denied.

57. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

ANSWER: Denied.

58. The court should enjoin such violations. *Id.*

ANSWER: Denied.

SECOND CAUSE OF ACTION
Illegal Solicitation of Persons on the DNCR
(On Behalf of Paisley and the Do Not Call Class)

59. Defendants violated 47 C.F.R. § 64.1200(c)(2) by initiating calls to Paisley and members of the DNCR Class while their phone numbers were on the DNCR.

ANSWER: Denied.

60. Paisley and members of the DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

ANSWER: Denied.

*61.* The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

ANSWER: Denied.

62. The court should enjoin such violations. *Id.*

ANSWER: Denied.

## THIRD CAUSE OF ACTION
### Failure To Identify
(On Behalf of Paisley and the Failure to Identify Class)

63. Defendants violated 47 C.F.R. § 64.1200(d)(4) by initiating calls to Paisley and members of the Failure to Identify Class without disclosing the name of the individual initiating the calls and the name of the person or entity on whose behalf the calls were made.

ANSWER: Denied.

64. Paisley and members of the Failure to Identify Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

ANSWER: Denied.

65. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

ANSWER: Denied.

66. The court should enjoin such violations. *Id.*

ANSWER: Denied.

## FOURTH CAUSE OF ACTION
### Illegal Use of an Automatic Telephone Dialing System
(On Behalf of Paisley and the Failure to Identify Class)

67. Defendants violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to contact Paisley and members of the ATDS Class.

ANSWER: Denied.

68. Paisley and members of the ATDS Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

ANSWER: Denied.

69. The court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

ANSWER: Denied.

70. The court should enjoin such violations. *Id.*

ANSWER: Denied.

## **DEFENDANTS' DEMAND FOR JURY TRIAL**

Defendants BANKROLL and CHARAN hereby demands a jury trial on all issues so triable.

**WHEREFORE**, Defendants having Answered the Amended Complaint, pray that the Court enters an order of judgment in favor of Defendant wherein Plaintiff Paisley and his alleged class members take nothing under the Complaint for failures to state a claim under the TCPA, DNCR and Failure to Identify for which recovery can be obtained, and failure to state a claim beyond claims recoverable by Paisley individually, or alternatively to dismiss respective Complaint Counts with or without prejudice for substantive deficiencies and/or enter judgment for Defendant; or otherwise deny or dismiss class certification and claims; and  that, Paisley pays Defendants' costs, including attorney fees relevant to this claim, or any relief it deems necessary, as a part of such order; and grant such other and further relief as the Court deems just and proper.

Defendant further prays for costs, including attorney fees relevant to meritorious affirmative defenses, or any relief it deems necessary, as a part of such order.

## DEFENDANTS' AFFIRAMATIVE DEFENSES

Defendants assert the following defenses, each as separate and distinct defenses to Plaintiffs' alleged causes of action.  Insofar as any of the following expresses denial of an element of any claim alleged against Defendant(s), such expression does not indicate that Plaintiff is relieved of their burden to prove each and every element of any such claim or that Defendant has assumed any burden of proof. Defendants demand a JURY TRIAL on the following AFFIRMATIVE DEFENSES:

### ALTERNATIVE FACTS COMMON TO AFFIRMATIVE DEFENSES

1. Plaintiff's allegations of fact are incongruent with the ultimate facts of the operation and circumstances that transpired with  Defendants and conduct of the Defendants and  the Plaintiff.

2. Defendant BANKROLL operates as a marketing company that solicits business to business (B2B) sales and promotional offerings through email campaigns and telephone contact.

3. Defendant CHARAN dose not actively direct the day-to-day email and calling operations of the business but oversees the technology used by these functions and manages the overall business affairs of  Defendant BANKROLL,

4. Called Party telephone numbers which Defendant BANKROLL uses in the course of its business are sourced from public records of corporations published in state and governmental listing for corporations and businesses and uses these telephone numbers and emails to contact prospective customers for their clients.

5. Defendant BANKROLL utilizes live agents to place calls using a centralized system that requires human intervention, or live agent actions, to email prospects, place a call to

prospects, send a text message to prospects or perform an pre-recorded voicemail "drop" of a contact message in response to an email or lead.

6. The system used by Defendant BANKROLL is not a system consistent with the definition of the ATDS under the TCPA.

7. At all times relevant, Defendant BANKROLL subscribed, used, and controlled only select telephone numbers for inbound and outbound calls and text messages for marketing and sales for its clients.

8. Some of the telephone numbers contained within the Plaintiff's Amended Complaint were not subscribed to or controlled by the Defendants, either directly or indirectly, and were operated by other parties.

9. Neither Defendant BANKROLL nor Defendant CHARAN or those on their behalf, at any time relevant, placed a call to Plaintiff Paisley. Audit of all business records and call logs of the Defendant show this.

10. Neither Defendant BANKROLL nor Defendant CHARAN or those on their behalf, at any time relevant, sent a text message to Plaintiff Paisley. Audit of all business records and text message logs of the Defendant show this.

11. Plaintiff Paisley, and other similarly situated, do not fit the profile of Calling Parties in the regular business of Defendant BANKROLL.

12. Class certification is improper because business records of Defendant BANKROLL can identify and join parties similarly situated to Plaintiff Paisley.

FIRST AFFIRMATIVE DEFENSE
**WAIVER AND EQUITABLE ESTOPPEL**
(As to All Counts of the Complaint)

Defendants assert the affirmative defense of waiver and equitable estoppel.   Defendants avoid liability, or its liability is subject to set-off, because PAISLEY   and his representative Class

members have waived their right to recover against Defendant, in whole or in part, and/or their claims are otherwise barred by equitable estoppel based upon the circumstances.  By conduct, representations, and/or omissions of PAISLEY, upon which Defendants relied to their detriment, Plaintiff is equitably estopped from asserting any claim for relief against it.

WHEREFORE**,** Defendants pray that the Court enters an order of judgment wherein the Plaintiff takes nothing as PAISLEY, and alleged class members, have waived their right to recover against Defendant or are otherwise estopped under prevailing law and Plaintiff pays Defendant's costs, including attorney fees relevant to this Affirmative Defense, or any relief it deems necessary, as a part of such order.

SECOND AFFIRMATIVE DEFENSE
**AVOIDANCE OF CLASS ACTION LAIBILITY**
**CLASS OVERBROAD AS TO NUMEROSITY & TYPICALITY**
(As to TCPA Classes)

If Defendants are liable to PAISLEY, it is not liable in whole or in part to PAISLEY for punitive damages under federal rules pursuant to the TCPA for willfully placing calls or sending text messages without full expressed written consent, such liability is limited or barred outright. This is because PAISLEY's telephone number had been previously published as a business line or PAISLEY otherwise responded to Defendant BANKROLL's emails or similar inbound contact by PAISLEY and Defendants reasonably avoided contact with persons and consumers under the TCPA.  Defendant is similarly not liable to a class of persons as defined by ¶ 46 of the Complaint based upon the conduct of  PAISLEY.  The class defined by PAISLEY is overbroad as to calls and text messages under the TCPA as to typicality and numerosity for purposes of relief and recovery by the class.  More specifically, Defendant BANKROLL does not use or operate a system that is defined as an ATDS  as prescribed under prevailing law.  PAISLEY has defined his ATDS class as consisting of:

> All people in the United States (1) to whom Defendants initiated more than one call to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate calls to Paisley, (3) within the last four years from the filing of this action.

> See, Amend. Compl. ¶ 46.

PAISLEY's class embodies a class of person(s) that fall outside the prescribed definition of ATDS for purpose of Class certification as it is open-ended to any equipment, beyond that within the scope of the TCPA. This Class embodies calls by any telephone system, equipment, or device, including calls made by cellular telephones to cellular telephone directly. This Class embodies both lawful and unlawful calls and text messages, as defined by the Class certification definition. No such distinction is made in the definition of ATDS under the TCPA for persons or their circumstance similar to PAISLEY. Plaintiff fails to sufficiently and ascertainably define a class of persons who have suffered damages under the TCPA that are substantially similar to those experienced by the Plaintiff himself. If Defendants are liable to the PAISLEY under the TCPA, it is only for the calls and text messages received in violation of the TCPA, and they avoid liability as to other calls and/or text messages. Recovery for a class of persons under TCPA claims of the Complaint is an overbroad class of persons to whom recovery is not entitled. As to remaining claims through the TCPA, PAISLEY has defined his DNCR class as consisting of:

> All people in the United States (1) to whom Defendants initiated more than one telephone solicitation within any 12-month period, (2) to their cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) within the last four years from the filing of this action. See, Amend. Compl. ¶ 46.

Published records, upon which the Defendant BANKROLL may have relied, did not delineate cellular telephone versus primary business line for business. Furthermore, Defendant BANKROLL's business records and calling logs show no call being made or placed to PAISLEY at the telephone number alleged in the Complaint during the relevant period. PAISLEY's proposed

calls are overbroad for purposes of TCPA violation and Class definition as they lack numerosity and typicality.

WHEREFORE, Defendants pray that the Court enters an order of judgment wherein the PAISLEY as a representative Plaintiff is particularized for TCPA and DNCR Class purposes, visa via the TCPA, and alleged class members, and that they take nothing outside the particular circumstances of PAISLEY as they have failed to sustain a cognizable injury in fact to recover against Defendants under prevailing law and PAISLEY pays Defendant's costs, including attorney fees relevant to this Affirmative Defense, or any relief it deems necessary, as a part of such order.

THIRD AFFIRMATIVE DEFENSE
**SUBSTANTIAL COMPLIANCE & BONA FIDE ERROR**
(As to all Counts of the Complaint)

For any finding of violation under the TCPA or DNCR as alleged in the Amended Complaint, Defendants avoid liability for damages to the Class members because Defendants substantially complied with the requirements of the TCPA for the business it conducts and acted in good faith reliance that its conduct qualified for exemptions and Safe Harbors provided by the TCPA and its corresponding regulations. The Calling Party profile used by Defendant BANKROLL is that of an active corporation or business for the purpose of B2B sales and promotions. The alleged calls and/or text messages received by PAISLEY were the result of a bona fide error on the part of the Defendants and not a repeated practice. Any other messages potentially received by Class members were the result of the same error.

WHEREFORE, Defendant prays that the Court enters an order of judgment wherein PAISLEY, and his alleged class members, take nothing, or any damages are set off by the good faith reliance of the Defendant of prevailing rules and law. and any other relief it deems necessary, as a part of such order.

23

FOURTH AFFIRMATIVE DEFENSE:
**NO KNOWING OR WILLFUL CONDUCT**
(As to all Counts)

For any finding of violation under the TCPA and DNCR as alleged in the Amended Complaint, Defendant avoids liability as to putative class members as such members are precluded from any recovery against Defendant for a willful and knowing violation of the TCPA or DNCR.  Any such violation by the Defendant, which Defendant denies occurred in the instance of PAISLEY, would not have been willful or knowing but in fact was inadvertent and unintentional based upon information Defendant possessed at the time.   PAISLEY, beyond his bald allegations and inferences of knowing and willful conduct, lacks any proof of the substance of such claims. Damages, if any, should be limited to statutory damages to PAISLEY and in accordance with Defendants TCPA and DNC written policies, or at the court's discretion under prevailing law, minimal statutory damages.

WHEREFORE**,** Defendant prays that the Court enters an order of judgment wherein the PAISLEY, and alleged class members, take no statutory damages for intentional or willful conduct on the part of the Defendant and any damages awarded are the statutory minimum or actual damages suffered by the PAISLEY and the Class members, and the Court aware any other relief it deems necessary, as a part of such order.

FIFTH AFFIRMATIVE DEFENSE:
**LIAMITED LIABILITY DUE TO LIMITED USE OF PRE-RECORDED MESSAGES BY LIVE OPERATORS**
(As to TCPA Pre-recorded Class)

If Defendants are liable to PAISLEY for use of , it is not liable in whole or in part to PAISLEY for punitive damages under federal rules pursuant to the TCPA for willfully placing calls with a pre-recorded message without full expressed written consent, such liability is limited and particularized for Class purposes. This is because Defendants use of pre-recorded messages is not

24

an automated function of the software used by Defendants, but instead is based upon live operator interaction with the function and messages which is a selective process not done on all occasions or with all calls.  Plaintiff's claims under a proposed Pre-recorded Class are not widespread, can be identified to the particular instances, those called can be joined, and lack the numerosity requisite for Class certification.  To the extent that Defendants are liable to representative plaintiff PAISLEY, and similarly situated persons under the Pre-recorded Class,  such instances are limited in damages and persons affected.

WHEREFORE**,** Defendants pray that the Court enters an order of judgment wherein the PAISLEY as a representative Plaintiff is particularized for TCPA Pre-recorded Class purposes, and alleged class members, and that they take limited statutory damages particular circumstances similar to that of  PAISLEY pays Defendant's costs, including attorney fees relevant to this Affirmative Defense, or any relief it deems necessary, as a part of such order.

*Respectfully Submitted*,                                    Date: February 27, 2024
On Behalf of the  Defendants

By: */s/ Edward A. Maldonado /s/*              Law Offices of Edward A. Maldonado, P.A.
Edward A. Maldonado, Esq.                     MALDONADO LAW
Florida Bar No. 0129781                          2850 Douglas Road. Suite 303. Coral Gables,
                                                                 Florida 33134
                                                                 Telephone: (305) 477-7580 ex 214
                                                                 E-mail: eam@maldonado-group.com
                                                                 2d Email: lawclerk@maldonado-group.com

                                                                 *Attorney for Defendants Bankroll & Charan*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically through the

Court's CM/ECF system and served via the same on all counsel of record this February 27, 2024.


By: *<u>/s/ Edward A. Maldonado /s/</u>*
Edward A. Maldonado, Esq.
Florida Bar No. 0129781

Law Offices of Edward A. Maldonado, P.A. MALDONADO LAW
2850 Douglas Road. Suite 303. Coral Gables, Florida 33134
Telephone: (305) 477-7580 ex 214
E-mail: eam@maldonado-group.com
Secondary Email: lawclerk@maldonado-group.com


*Attorney for Defendants Bankroll & Charan*